**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FIFTH THIRD BANK, a Michigan banking corporation,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09-CV-05198** |
| **v.** | ) | |
| | ) | **Hon. Joan H. Lefkow** |
| **RACINE MOTORSPORTS, LTD., a Wisconsin corporation, and SCOTT DARVILLE, an individual,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Fifth Third Bank ("Fifth Third") brought suit against Racine Motorsports, Ltd. ("RML")
and Scott Darville ("Darville") arising from alleged fraudulent transfers that occurred between
Emily, Inc. ("Emily") and Darville and RML.[1]  Counts I, II, and III allege fraudulent transfer
against Darville under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), codified at 740
Ill. Comp. Stat. § 160/5(a) *et seq.*  Counts IV, V, and VI allege fraudulent transfer against RML
under the IUFTA.  Counts VII, VIII, and IX allege fraudulent transfer against RML and Darville
jointly under the IUFTA.  Fifth Third moves separately to strike Darville's answer and either for
judgment on the pleadings against RML or to strike RML's answer.  For the reasons set forth
below, Fifth Third's motion for judgments on the pleadings [#32] is granted as to liability, and
its motion to strike Darville's answer [#34] is granted.

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

Emily, an Illinois corporation, entered into a series of promissory notes on April 24, 2007 with Fifth Third by which Fifth Third provided a line of credit to enable Emily to purchase new and used motor vehicles for sale or lease. In exchange, Emily promised to repay Fifth Third the principal balance with interest. Fifth Third also extended an open line of credit to Emily under other loan agreements through which Emily was entitled to purchase inventory and other assets. Under these loan agreements, Fifth Third holds a lien on all Emily's assets and therefore has a security interest in all of Emily's cash and accounts.

On November 18, 2008, Emily executed an agreement with Fifth Third (the "turnover agreement") by which Emily acknowledged and agreed that it was in default under the loan agreements and transferred all its assets to Fifth Third. Under the turnover agreement, Emily admitted that its default was "a result of knowingly and intentionally False Statements Emily, through Ott, and Ott made to [Fifth Third] regarding the value of assets for which [Fifth Third] advanced monies under various of the Notes. . . . [and] for misappropriation and fraudulent transfer of funds received from [Fifth Third]." Ex. A to Turnover Agreement, attached as Compl. Ex. A. Emily acknowledged that, at the time of the turnover agreement, the outstanding amount it owed Fifth Third was $30,560,060 in principal, and $55,166.21 in interest, future interest, and Fifth Third's fees and costs.

Fifth Third alleges that Emily fraudulently transferred money to RML and Darville as part of a "scheme to defraud lending institutions into lending massive amounts to Emily, and to subsequently transfer the borrowed funds to third parties." *Id.* at ¶ 22. On November 3, 2009, this court entered a default judgment against RML because it failed to timely answer the

complaint and failed to appear for a scheduled status hearing. *See* Dkt. No. 17. Fifth Third subsequently submitted affidavits offering to prove-up damages. In a minute order issued on January 17, 2010, this court found that Fifth Third failed to present prima facie evidence of either its right to relief against RML or the amount of damages owed. *See* Dkt. No. 27. As a result, this court ordered RML to answer the complaint.

Counts I, II, and III involve alleged fraudulent transfers made by Emily to Darville. Counts I and II allege that, through a series of checks, Emily transferred $306,394.60 to Darville with the intent to defraud Fifth Third and without receiving reasonably equivalent value in exchange, in violation of 740 Ill. Comp. Stat. § 160/5(a)(1)-(2). Moreover, Count III alleges that a portion of these transfers ($154,194.50) were made after Fifth Third's claims against Emily arose, at a time when Emily was, or as a result became, insolvent, in violation of 740 Ill. Comp. Stat. § 160/6(a). In his answer to the complaint, Darville asserted his Fifth Amendment right against self-incrimination to virtually all of Fifth Third's allegations, claiming his answer might tend to incriminate him. Darville admitted only that "Fifth Third is a Michigan banking corporation incorporated in the state of Michigan, and licensed to do business in Illinois," that "Fifth Third maintains its principal place of business in Cincinnati, Ohio," and that he is an adult. Darville Answer ¶¶ 1, 3.

Counts IV and V allege that, through a series of checks, Emily fraudulently transferred $2,197,078.51 to or for the benefit of RML with the intent to defraud Fifth Third and without receiving reasonably equivalent value in exchange, in violation of 740 Ill. Comp. Stat. § 160/5(a)(1)-(2). Count VI alleges that a portion ($865,000) was transferred after Fifth Third's claims against Emily arose, at a time when Emily was, or as a result became, insolvent, in

violation of 740 Ill. Comp. Stat. § 160/6(a). RML did not respond to the substantive allegations against it, claiming that because Darville is "the only agent of [RML] having knowledge and information sufficient to form a belief about the truth of [the] allegation[s] and he is asserting his rights against self-incrimination, [it] cannot answer [the] allegation[s]." *E.g.*, RML Answer ¶ 55.

Counts VII and VIII allege that, through a series of checks, Emily fraudulently transferred $891,371.02 to Hawthorne Credit Union for the benefit of Darville and/or RML with the intent to defraud Fifth Third and without receiving reasonably equivalent value in exchange, in violation of 740 Ill. Comp. Stat. § 160/5(a)(1)-(2). Count IX alleges that a portion of these transfers ($452,928.11) were made after Fifth Third's claims against Emily arose, at a time when Emily was, or as a result of became, insolvent, in violation of 740 Ill. Comp. Stat. § 160/6(a).

## ANALYSIS

### I.      Judgment on the Pleadings

The legal standard for reviewing a judgment on the pleadings is identical to the standard used for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Guise* v. *BWM Mortgage*, *LLC*, 377 F.3d 795, 798 (7th Cir. 2004). "Therefore, viewing all of the facts in a light most favorable to the non-moving party, the district court may only grant the motion if it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." *U.S.* v. *Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991) (citations omitted). Although the court may not look beyond the pleadings and "all uncontested allegations to which the parties had an opportunity to respond are taken as true," the court "may take into consideration documents incorporated by reference to the pleadings." *Id.* at 1581-82 (citations omitted.)

RML does not contest an entry of judgment on the issue of liability but challenges the

amount of damages that should be awarded. RML's Resp. ¶¶ 8-10. Ordinarily, when liability is uncontested or default has been entered, damage assessments can be made without a separate hearing if they are liquidated or capable of easy calculation. *Merrill Lynch Mortgage Corp.* v. *Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (citation omitted). Given that this court previously found that Fifth Third failed to adequately prove up damages, judgment on the pleadings with respect to damages is improper. Thus, this matter will again be set for a prove up hearing. RML is directed to identify the amount of damages it disputes, at which point Fifth Third may elect not to pursue recovery of the disputed portion, as it indicates it may be willing to do with respect to the Hawthorne Credit Union transfers, *see* Fifth Third Reply in Supp. of Mot. For J. on the Pleadings ¶ 12, or to establish that the judgment should include the disputed amounts.

## II.     Motion to Strike Darville's Answer

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) are generally disfavored and a court "ordinarily will not strike a pleading unless the court can confidently conclude that it is prejudicial to the objecting party." *McDowell* v. *Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 693 (N.D. Ill. 2009).

The Fifth Amendment protects witnesses and parties in a civil lawsuit from being required to make disclosures that could incriminate them in a subsequent criminal proceeding. *See Nat'l Acceptance Co. of Am.* v. *Bathalter*, 705 F.2d 924, 926-27 (7th Cir. 1983). The Fifth Amendment protections are afforded throughout the proceedings including pleadings and discovery. *See id.* "[T]he right to assert one's privilege against prosecution 'does not depend upon the [l]ikelihood, but upon the [p]ossibility of prosecution.'" *In re Folding Carton Antitrust*

*Litig.*, 609 F.2d 867, 872 (7th Cir. 1979) (quoting *In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974)).  A person does not, however, have carte blanche to refuse to answer questions:  "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability."  *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (citations omitted).

Darville's answer is strikingly similar to the blanket invocation of the Fifth Amendment rejected by the court in *Johnson* v. *Smith*, No. 92 C 5495, 1992 WL 346440 (N.D. Ill. Nov. 19, 1992).  In that case, the court ordered the defendant to confer with his attorney "to determine whether all aspects of the self-incrimination claims . . . qualify as bona fide assertions of the privilege." *Id.* at *2.  For example, the court found that "[n]o confirmation of [the court's subject matter jurisdiction] could conceivably tend to incriminate [defendant]-by admitting that plaintiffs *purport* to make such claims, [defendant] does not in any way validate them." *Id.* at *1. Moreover, the court questioned the appropriateness of the defendant's assertion of privilege as to venue, the defendant's residence, and his race. *Id.*  In this case, Darville also reflexively claims privilege on all allegations except that he is an adult.  He argues that admitting to his residence could result in criminal action in the state to which he admits any contact.  Admitting residence, however, does not have a tendency to subject a person to criminal liability because no matter whether Darville is a resident of Wisconsin or Illinois, he may be subject to criminal liability for his actions.  As Fifth Third posits, "Darville might as well argue that he cannot admit what his own name is, as that would make it possible for a law enforcement agency to charge him."  Fifth Third Reply in Supp. of Mot. to Strike Darville's Answer ¶ 10.  Accordingly, Fifth Third's

motion to strike Darville's answer will be granted. Darville is ordered to confer with his attorney to determine whether all assertions of the Fifth Amendment qualify as bona fide assertions of the privilege and to file an amended answer.

## CONCLUSION AND ORDER

For the foregoing reasons, Fifth Third's motion for judgment on the pleadings [#32] is granted as to liability. A prove up hearing is set for July 13, 2010 at 8:30 a.m. Fifth Third's motion to strike Darville's answer [#34] is granted. Darville is ordered to confer with his attorney to determine whether his assertions of the Fifth Amendment are proper and to file an amended answer within fourteen days.


Dated: May 28, 2010            Enter: _____

                                      JOAN HUMPHREY LEFKOW
                                      United States District Judge